W. S. GILMAN, Appellant, v. CITY OF SIOUX CITY et al., Appellees.

No. 41546.

DECEMBER 13, 1932.

Fred H. Free, Robert J. O'Connor, and Edwin W. Baron, for appellant.

Gleysteen, Purdy & Harper, Milchrist, Schmidt, Marshall & Jepson, Baron & Bolton, and Frank J. Duggan, for appellees.

FAVILLE, J.—Chapter 475 of the Code provides for the creation of a municipal court in certain cities, fixes its jurisdiction, and establishes its procedure.

Code Section 10643, which is a part of said chapter, provides for the calling of an election on the question of the establishment of a municipal court, and contains the following provision:

"Upon the filing with the city clerk of a petition of not less

than fifteen per cent of the qualified electors, as shown by the poll list in the last municipal or state election of any municipal court district, * * *"

The sole question involved in this appeal is whether or not the petition which was filed with the mayor preliminary to the calling of said election complied with the provisions of this statute. The final question in the case is: What is meant by the words "qualified electors, as shown by the poll list?" Do they mean the permanent registration list, or the list of those who actually voted at the last election?

Chapter 39-B1 of the Code provides for the permanent registration of qualified voters in certain cities.

Code section 718-b5, which is a part of said Chapter 39-B1, requires that the commissioner of registration "shall provide for an original list of qualified voters, indexed alphabetically, which shall be kept at the office of the commissioner of registration." This list, under the statute, shall be known as the "original registration list," and it shall remain permanently in the office of the commissioner of registration. A second list, to be known as the "duplicate registration list," shall be prepared by the commissioner from the original registration list. Under Code section 718-b8 this duplicate registration list shall be delivered by the commissioner to the judges of election and shall be known as the "election register." It contains the name and address of every registered voter in the particular election precinct, together with a space following each name, on which shall be recorded the words "voted" or "not voted" as the case may be. There is also a space for "remarks," in which shall be recorded any challenges, affidavits, or other information as may be required. The statute provides that the entry of the words "voted" or "not voted," "challenged," etc., shall be made by the judges of election immediately after approving the certificate of registration.

Code section 718-b20 provides that, before a person offering to vote receives the ballot from the judge or enters the voting machine, he shall sign a certificate to the effect that he is a qualified voter in said election precinct. This is to be approved by the judge or clerk of election after comparison to ascertain if the signature of the voter on the certificate of registration and the signature on the register list appear to be the same. Thereupon the voter shall present this certificate to the judge in charge of the ballot or voting

machine as proof of his right to vote, and after voting the voter shall present his certificate of registration to the judge or clerk in charge of the register of the election, who shall make entry as provided in section 718-b8, showing whether the elector "voted" or "not voted." Said section then provides:

"The certificates shall be arranged in alphabetical order after the close of the election, placed in envelopes provided for that purpose, and returned to the city clerk as commissioner of registration."

Section 718-c2 is as follows:

"The entries required to be made in sections 800 and 808 shall be made on the certificates of registration provided for in section 718-b20."

Turning to sections 800 and 808, we find that these sections are in the general chapter pertaining to the method of conducting elections generally: that is to say, to the general method pursued in conducting elections where there is no permanent registration as provided by said chapter 39-B1.

Section 800 provides as follows:

"The name of each person, when a ballot is delivered to him, shall be entered by each of the clerks of election in the poll book kept by him, in the place provided therefor."

Section 808 is as follows:

"The clerks of election shall enter upon the poll lists, after the name of any elector who received such assistance in marking his ballot, a memorandum of the fact."

It is obvious that the legislature intended by section 718-c2 to provide that the certificates of registration, which were to be arranged in alphabetical order after the close of the election and returned to the commissioner of registration as a permanent file, were to take the place of the poll book provided for in the general chapter on elections, and that the entries which are made on the poll book under sections 800 and 808 are, by virtue of section 718-c2, to be made on the certificates of registration, there being no poll book used in cities that have permanent registration.

Here we have a situation where a petition is filed calling for an election for the establishment of a municipal court under Code sec-

tion 10643, the statute requiring that the petition shall be signed by not less than fifteen per cent of the "qualified electors, as shown by the poll list in the last municipal or state election." Does "poll list," as used in said statute, mean the permanent registration list, or the certificate of registration of the persons who actually participated in said election? From a reading of these various statutes we think it was the intent of the legislature that the certificates of registration showing the qualified electors who participated in the election, where the method of permanent registration is in vogue, should be regarded the same as the poll books returned from voting precincts where there is no permanent registration showing the voters who participated in the election. In other words, when the legislature used the term "poll list" in the statute providing for the petition for the establishment of a municipal court, it was evidently intended to refer to the list of qualified electors who had in fact participated in the last municipal or state election. In the case of a precinct where permanent registration was not required, said "poll list" would appear in the poll book as provided by section 800 of the Code. In the case where permanent registration was in effect, the "poll list" would be the certificates of qualified electors who had participated in said election, which said certificates had been arranged in alphabetical order after the close of the election and returned to the commissioner of registration as provided by section 718-b20. In other words, the "poll book" in one instance, and the "certificate of registration" in the other, become the "poll list" of the qualified electors as shown at said election.

The words "poll list" occur in at least two other places in the Code. In section 840 it is provided that:

"When the poll is closed, the judges shall * * * compare the poll lists and correct errors therein."

This obviously must refer to the list made at the polls in the general election of the qualified electors who participated therein.

Section 845 provides:

"If the ballots for any office exceed the number of the voters in the poll lists, such fact shall be certified, with the number of the excess, in the return."

This statute also obviously refers to the poll lists of the voters who have participated in the election. It is a provision against the

possibility of the ballots found in the ballot box exceeding the number of voters as shown in the poll lists, which must be the number of persons who in fact participated in the election at which the "poll list" was prepared.

We think the conclusion is quite inevitable that the legislature intended that the petition for the calling of an election on the question of establishing a municipal court should be signed by fifteen per cent of the qualified electors who actually participated in the last election as shown by the official documents, as distinguished from the qualified electors who might have participated in said election as shown by the permanent registration list. Under the stipulated facts the petition in question was signed by the necessary number of qualified electors.

The trial court did not err in dismissing appellant's petition, and its order must be affirmed. The stay order issued from this court is dissolved.—Affirmed.

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.

KINDIG, J., takes no part.